UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                                    Case No. 07-20152
                                                        Hon. Mark A. Goldsmith

vs.

COURTNEY GIBSON,

       Defendant.
_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (Dkt. 65)

Defendant Courtney Gibson pleaded guilty to possession with intent to distribute cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1), and possession of firearms in furtherance of a drug crime, in violation of 18 U.S.C. § 924(c)(1)(A). See Judgment (Dkt. 38). Judge John Corbett O'Meara sentenced Gibson to 210 months' imprisonment on June 22, 2009. Id.[1] Gibson, age 42, began serving his custodial sentence at FCI Yazoo City Medium on June 17, 2009. He has served just under twelve years of his sentence. Gibson's projected release date is February 23, 2024.

On November 10, 2020, Gibson tested positive for COVID-19. He subsequently recovered. On March 25, 2021, Gibson filed the instant motion for compassionate release under 18 U.S.C. § 3582(c), based on (i) his fear of reinfection and (ii) his desire to care for his elderly mother, who has no other children (Dkt. 65).[2] He further argues that compassionate release is warranted in light of the amount of programming that he has completed while incarcerated (nearly

---

[1] This case was reassigned to the undersigned on November 19, 2019.

[2] Although Gibson discusses his desire to care for his elderly mother in the section of his brief pertaining to 18 U.S.C. § 3553(a), he appears to suggest that this familial circumstance is an extraordinary and compelling circumstance warranting release.

200 hours), his disciplinary record, and the fact that he has served 85 percent of his sentence. Id. at 12-15. The Government argues that Gibson's motion should be denied for failure to exhaust his administrative remedies or, alternatively, for failure to satisfy the substantive requirements for compassionate release. Resp. at 2 (Dkt. 70). For the following reasons, Gibson's motion is denied.[3]

## I. BACKGROUND

On January 23, 2007, police officers responded to a report of domestic violence at an apartment complex in Pittsfield Charter Township, Michigan. Gibson was standing in the parking lot outside the apartment complex when the officers arrived. One of the officers, Officer Hornbeck, approached Gibson, asking Gibson where he was headed and requesting that Gibson approach the officer. Gibson tossed the backpack that he was wearing and began running through the parking lot. Officer Hornbeck chased after him. Officer Hornbeck ordered Gibson to stop running. When he did so, Gibson pulled a loaded firearm from his waistband. Officer Hornbeck pulled his own weapon and ordered Gibson to drop his firearm. Gibson tossed the firearm but continued to run as he simultaneously continued to discard other items from his person.

Officer Hornbeck recovered the loaded firearm—which had a round in the chamber and the safety turned off—that had been discarded by Gibson. He also recovered the backpack that Gibson had discarded. Inside the backpack, Officer Hornbeck found six knotted plastic bags of cocaine base (crack) weighing 13 grams; ten clear plastic bags of marijuana weighing 156 grams; two knotted plastic bags of cocaine powder weighing 51 grams; and a digital scale. Another officer located Gibson.

---

[3] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

2

Gibson admitted to the officers that he fled because he was on probation and knew that he was in possession of a firearm and marijuana. He denied ownership of the crack and cocaine powder. However, he later admitted—upon entering his guilty plea—that he had "coke cocaine" in his possession. Guilty Plea Questionnaire at 2 (Dkt. 36). Gibson was sentenced to 210 months' imprisonment on June 22, 2009. Judgment.

On December 1, 2020, Gibson notified the warden of the facility at which he is incarcerated of his request for compassionate release. 1st Request, Ex. 1 to Mot. (Dkt. 65-2). Specifically, Gibson wrote, "i like for a legall team to be put together for me casue im filie compassionate release." Id. (misspellings in original). Gibson did not receive a response. On February 11, 2021, Gibson sent another request, writing, "i writng to get my compassionate release going.An im done 81% of my time,an took over 20 class an im been rehabilited an im a only son an my mother is up in age to.So can u put a team together about getting my compassionate release going thank you[.]" 2d Request, Ex. 1 to Reply (Dkt. 72-2). Gibson did not receive a response to this request either.

## II. LEGAL STANDARD

The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003–1004 (6th Cir. 2020). Before granting a compassionate-release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction," (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101

(6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. It further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

## III. ANALYSIS

### A. Exhaustion

Before seeking compassionate release from federal courts, prisoners must "fully exhaust[] all administrative rights," or, alternatively, wait for 30 days after the warden's "receipt of [their] request." 18 U.S.C. § 3582(c)(1)(A). The Sixth Circuit has held that there are no statutory exceptions to this exhaustion requirement. United States v. Alam, 960 F.3d 831, 835–836 (6th Cir. 2020). Further, as another court within this district has held, "[w]here the factual basis in the administrative request and the motion before the court are different, a defendant does not satisfy the exhaustion requirement because he does not give the BOP an opportunity to act on the request before Defendant brings his request to the courts." United States v. Asmar, 465 F. Supp. 3d 716, 719 (E.D. Mich. 2020) (citations omitted).

In this case, the Government concedes that Gibson requested compassionate release from the warden, but it argues that Gibson nevertheless failed to comply with § 3582(c)(1)(A)'s mandatory exhaustion requirement because Gibson's request did not "stat[e] with specificity the

reason(s) he believed such a request should be granted." Resp. at 14. The Government is incorrect that Gibson did not state any specific reason for compassionate release. In both his second request to the warden and the instant motion for compassionate release, Gibson provides that he seeks compassionate release for reasons including (i) that his mother is aging and Gibson is her only son, (ii) Gibson has completed over 80 percent of his sentence, and (iii) he has worked towards rehabilitation by participating in BOP programming in prison. As a result, Gibson specified the reasons that he believed entitled him to compassionate release. Further, more than 30 days elapsed between the time that Gibson sent his second request to the warden and the time that Gibson filed the instant motion for compassionate release. As a result, Gibson has properly exhausted his administrative remedies, at least with respect to one of his two bases for moving for compassionate release: to care for his elderly mother.

However, the Government is correct that neither of Gibson's requests to the warden mention his fear of reinfection—the other basis for Gibson's motion for compassionate release. The Court need not decide whether, under Asmar, Gibson's motion—to the extent it seeks release based on Gibson's fear of reinfection—fails for improper exhaustion of his administrative remedies. Even assuming that Gibson properly exhausted his administrative remedies with respect to both of the bases upon which he moves for compassionate release, his motion nevertheless fails on the merits, for the reasons discussed below.[4]

### B. Extraordinary and Compelling Circumstances

Gibson argues that release is warranted due to (i) his fear of reinfection and (ii) his desire to care for his aging mother. Each argument reason is addressed in turn. The Court concludes that

---

[4] Accordingly, the Court need not address Gibson's argument that he should be excused from compliance with the exhaustion requirement because his administrative remedies were rendered unavailable by dangers posed by the COVID-19 pandemic. See Mot. at 4–5.

neither reason constitutes an extraordinary and compelling circumstance warranting compassionate release. Even if they did, the § 3553(a) factors weigh against granting release.

### i. Gibson's Fear of Reinfection

With respect to motions for compassionate release premised on a defendant's fear of contracting COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Rather, a defendant must point to specific conditions that create a higher risk that the defendant will contract the virus. To determine whether a defendant's specific conditions render him particularly vulnerable to contracting COVID-19, courts generally consult the guidance on high-risk factors published by the Centers for Disease Prevention and Control (CDC). See Elias, 984 F.3d at 521.

Because Gibson has already contracted and recovered from COVID-19, the relevant inquiry is whether Gibson has a high risk of reinfection. Gibson, citing various sources, simultaneously argues that "any conclusions regarding the infrequency of reinfection are premature" and that "reinfection rates will likely increase." Mot. at 8–9.[5] Putting aside the incongruent nature of these arguments, the Court finds that, under current CDC guidance, "[c]ases of reinfection with COVID-19 have been reported, but remain rare."[6] Although "the probability of SARS-CoV-2 reinfection is expected to increase with time after recovery from initial infection because of waning immunity and the possibility of exposure to virus variants," an "increasing

---

[5] Gibson suggests that one of the reasons that reinfection rates will increase is that there are "now new strains of COVID-19." Mot. at 11. Even so, as discussed below, Gibson does not possess any underlying health conditions that render him at a higher risk of contracting one of the strains of COVID-19.

[6] CDC, Reinfection with COVID-19, https://perma.cc/8KE3-V39N.

number of published studies suggest that," presently, ">90% of recovered COVID-19 patients develop anti-SARS-CoV-2 antibodies" and "[a]dditional studies also demonstrate antibody response . . . can be durable for 6 months or more."[7]  Based on the CDC's current guidance, this Court and others have held that the low risk of reinfection is not an extraordinary and compelling reason warranting release.  See, e.g., United States v. Johnson, No. 11-20493, 2021 WL 822495, at *3 (E.D. Mich. Mar. 4, 2021); United States v. Jackson, No. 17-55, 2021 WL 467590, at *2 (N.D. Ohio Feb. 9, 2021).  The same approach is appropriate here.

The Government points out that when Gibson contracted COVID-19 in November 2020, he was asymptomatic and did not require medical intervention.  Resp. at 16 (citing Medical Records at PageID.319 (Dkt. 68)).  Gibson contends that "this status increases his future risk from the virus." Mot. at 10.  To support his argument, Gibson cites (i) a district court opinion, United States v. Walls, No. 2:12-CR-00173, 2020 WL 6390597, at *10 (W.D. Pa. Nov. 2, 2020), and (ii) an article authored by Abantika Ghosh.[8]  The Walls opinion, in turn, cites two publications; one is authored by Quan-Xin[9] and one is authored by Apoorva Mandavilli.[10]  None of these sources is up to date; the Ghosh article was published in October 2020 and the two publications cited by Wall were published in June 2020.  As a result, the accuracy of these sources as of today is unclear.  Further, none of these sources suggests that someone who is asymptomatic while infected with

---

[7] CDC, Interim Guidance on Duration of Isolation and Precautions for Adults with COVID-19, https://perma.cc/58NM-LH4U.

[8] See Abantika Ghosh, US Reports First Case of COVID Reinfection with More Severe Symptoms Second Time, The Print, https://perma.cc/YY5L-BQJ5.

[9] See Quan-Xin Long, et al., Clinical & Immunological Assessment of Asymptomatic SARS-CoV2 Infections, Nature Medicine, https://perma.cc/LPT3-WYCA.

[10] See Apoorva Mandavilli, You May Have Antibodies After Coronavirus Infection. But Not for Long, New York Times, https://perma.cc/R4LQ-5965.

COVID-19 does not obtain any immunity from the initial infection. Rather, they suggest that the immunity obtained may only last for a few months.

Even assuming that Gibson no longer has immunity from his initial infection, he does not possess any underlying health conditions or an older age that would render him higher risk for suffering severe illness from COVID-19. Gibson vaguely references his "health conditions," without specifying his exact conditions. See Mot. at 4; Reply at 12. His medical records reveal that he has not been diagnosed with any conditions recognized by the CDC as conditions that definitively increase an individual's risk of severe illness from COVID-19.[11] In fact, the medical note that was entered when Gibson tested positive for COVID-19 in November 2020 reveals that Gibson does not have a "History of asthma or chronic lung disease, History of cardiac, liver or kidney disease, History of diabetes, obesity or immunocompromised"—conditions which would increase his risk of severe illness from COVID-19. See Medical Records at PageID.319. Gibson also references his age as a reason that he faces a higher risk of severe illness from COVID-19. See Reply at 12. Regarding age, the CDC's guidance provides that "older adults"—meaning adults over the age of 65—are more likely to get severely ill from COVID-19.[12] Gibson, who is 42 years old, clearly does not qualify as an "older adult." It is further worth noting that FCI Yazoo City Medium, where Gibson is incarcerated, currently has no inmate cases and only six staff cases of COVID-19.[13] These numbers—which are low compared to those of other facilities—indicate that Gibson's chances of being exposed to the virus are likewise comparatively low.

---

[11] See CDC, People with Certain Medical Conditions, https://perma.cc/3YXY-UGZQ.

[12] Id.

[13] BOP, COVID-19 Cases, https://perma.cc/JNP4-FHJ3.

If Gibson still has immunity from his November 2020 infection, he could maintain immunity for potentially several more months, as the current CDC guidance suggests. The Government represents that, "[a]s the BOP continues to administer vaccinations, Gibson's immunity will likely last until he and inmates at his facility are vaccinated." Resp. at 16. Gibson argues, among other things, that "supply chain delays in vaccine production also make it difficult to predict if Mr. Gibson can even receive two doses of the vaccine" and "we do not know how long the vaccine gives immunity." Reply at 5, 7. Even if Gibson is not vaccinated as quickly as the Government anticipates, the Court finds that granting release is still unwarranted at this time. This is because, in order to release Gibson presently, the Court "would need to speculate as to whether there is a medically recognized possibility of becoming re-infected with COVID-19, and if there is, whether he would likely contract the disease once again." United States v. Benson, No. 03-80139, 2021 WL 527280, at *2 n.1 (E.D. Mich. Feb. 12, 2021). Gibson can take comfort in knowing that, once he is vaccinated, he will be protected for at least several months not only against COVID-19, but also against severe illness and against the new variants of COVID-19.[14]

For all of the above reasons, Gibson's fear of reinfection cannot support a finding of extraordinary and compelling reasons for compassionate release at this time.

### ii. Gibson's Aging Mother

Gibson also seeks release so that he may care for his mother, whom is 80 years old. Mot. at 12. Gibson argues that he is his mother's only child and, "[a]t her advanced age, it is critical to her health and well-being that she be cared for by her son." Id. However, "simply having an elderly parent who may need assistance, and may be susceptible to COVID-19, is not, by itself, exceptional and does not justify early release." Benson, 2021 WL 527280, at *2 n.1.

---

[14] CDC, COVID-19 Vaccines Work, https://perma.cc/V4Z3-VLK5.

Further, releasing an inmate to provide care for a parent is unwarranted if the record lacks sufficient details regarding the inmate's parent's current care arrangements and information that the inmate's "help is truly needed." United States v. Woolfork, No. 19-12, 2021 WL 210451, at *3 (S.D. Ohio Jan. 21, 2021). Gibson does not specify what, if any, ailments his mother may be experiencing that prevent her from being able to care for herself. It appears that Gibson's mother is merely elderly. In addition, Gibson does not specify his mother's current care arrangements. The fact that Gibson is his mother's "only child" does not necessarily mean that there are no other people who could provide caregiving services to his mother. In fact, Gibson's motion suggests that at least one other potential caregiver exists: Gibson's 23-year-old daughter. See Mot. at 12.

The fact that Gibson's mother and other family members may miss his presence in their daily lives is unfortunate, but certainly not extraordinary. "A crime often inflicts harm, not only on a direct victim, but on those in a defendant's circle of family and friends who depend on that defendant for all manner of support." United States v. Cole, No. 18-20237, 2021 WL 194194, at *3 (E.D. Mich. Jan. 20, 2021). Accordingly, the Court finds that Gibson has not shown any extraordinary and compelling reasons that warrant granting his motion for compassionate release.

### C. The § 3553(a) Factors

The § 3553(a) factors also weigh against granting Gibson release or a sentence reduction. Before granting a sentence reduction under the First Step Act, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant. Gibson's offense was serious. He possessed with the intent to distribute crack, which is classified as a Schedule II controlled substance due to its high potential for abuse. The circulation of such addictive drugs in the community presents a grave

danger to the community's health and wellbeing.  Further, Gibson committed the instant offense while armed with a firearm, which was loaded with the safety turned off.  By tossing his loaded firearm in a public area—where someone could have accessed it—while fleeing from the police, Gibson created a serious danger to the public's safety.

The instant offense was not Gibson's first drug offense.  He is a career offender who has repeatedly committed drug crimes.  His prior criminal history consists of eight misdemeanor convictions for possession of marijuana, three felony convictions for delivery of marijuana, and one felony conviction for possession of cocaine.  Although the Court is sympathetic towards Gibson's apparent difficulty in "control[ling] his marijuana addiction," the Court cannot ignore the fact that Gibson has established, through the instant offense and his criminal history, that he is a danger to the community.  If released at this time, there is a real possibility that he would commit more crimes, specifically drug crimes.  Granting Gibson compassionate release would not promote respect for the law or protect the public from further crimes by Gibson.

Gibson argues that his post-sentencing conduct—which includes completing nearly 200 hours of programming and not incurring any new disciplinary infractions over the past two years—weighs in favor of granting him release.  This recent behavior is laudable, and the Court encourages Gibson to keep on the right path.  However, the Court finds that Gibson's post-sentencing behavior has, in total, been far from exemplary.  Gibson has received numerous disciplinary violations during his incarceration.  In 2010, he was sanctioned for possessing intoxicants and tobacco.  In 2016, he was sanctioned for possessing stolen property.  In 2017, he was twice sanctioned for possession drugs and alcohol.  In 2019, he was sanctioned for making a false statement to a correctional officer and being in an unauthorized area.  These numerous violations, many of which

are drug-related, cast serious doubt on Gibson's position that he has been rehabilitated and would avoid committing further crimes—specifically drug-related crimes—if released at this time.

The § 3553(a) factors weigh against granting Gibson's motion for a compassionate release.

## IV. CONCLUSION

For the reasons stated above, Gibson's motion for a compassionate release (Dkt. 65) is denied.

SO ORDERED.

Dated: April 30, 2021　　　　　　　　　　　　s/Mark A. Goldsmith
　Detroit, Michigan　　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge